**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LUCAS AUSTIN, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | **Civil Action** _____ |
| vs. | |
| SEGWAY, INC., | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

**CLASS ACTION COMPLAINT**

Plaintiff, Lucas Austin ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Complaint against Defendant, Segway Inc. (Defendant), and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1.      Plaintiff brings this class action lawsuit as an individual who purchased Defendant Segway's Ninebot Max G30P Kick Scooter (hereinafter "Products" or "Scooter") for normal household use.

2.      Major retail outlets such as Walmart , Sam's Club, Target, Best Buy and Costco sell the Segway's Max G30P and Max G30LP Kick Scooters.  The Scooters can also be purchased online through the Segway's website and on Amazon amongst others.

3.      As such, these Scooters are distributed, marketed, and sold by Defendant to consumers across the United States.

4.      Unfortunately, the Products are defective because the folding mechanism on the Scooter can fail causing the handlebar or stem to fold while the Scooter is in use posing a fall hazard to the consumer. According to the CPSC Recall Notice, the Defendant has received numerous reports of users sustaining injuries ranging from abrasions to broken bones[1]. Walmart reports have claims of consumers suffering burn injuries and property damage.

5.      The Recall applies to approximately 200,000 Scooters that were manufactured and sold between January 2020 through March 2025 at prices ranging between $600-$1000 at the time of Recall[2].

6.      The model numbers are Max G30P and Max G30LP. The model numbers are located on the side of the footback on the Scooters.

7.      The Product is defective because the folding mechanism can fail causing the handlebars or stem to fold while the Scooter is in use.  This defect creates a fall hazard.

8.      Other manufacturers formulate, produce, and sell non-defective Scooters with formulations and production methods that do not cause the Products to catch fire, which is evidence that the fire risk inherent with Defendant's Products is demonstrably avoidable.

9.      Feasible alternative formulations, designs, and materials are currently available and were available to Defendants at the time the Products were formulated, designed, and manufactured.

10.      Plaintiff purchased the Product, while lacking the knowledge that the Product could have its handle bars collapse while in use, thus causing serious harm to those who use such Products.

11.      All consumers who purchased the worthless and dangerous Products have suffered

---

[1] https://www.cpsc.gov/Recalls/2025/Segway-Recalls-Segway-Ninebot-Max-G30P-and-Max-

[2] scooters

losses.

12.     As a result of the above losses, Plaintiffs seek damages and equitable remedies on behalf of themselves and the putative class.



(Space left intentionally blank)

## **PARTIES**

13.     Plaintiff Lucas Austin is a resident and citizen of Ville Platte, Louisiana. Ville Platte is located in Evangeline Parish.

14.     Defendant Segway Inc. is a US corporation organized and existing under the laws of the State of California with its principal place of business located at 405 E. South Clara Street, Arcadia, CA 91006.  Defendant is a company that is registered to do business in Pennsylvania, and

operates the manufacture and retail of the Product in the State of Pennsylvania, and throughout the United States.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

16.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

17.     Segway sells its products internationally, throughout the United States and within this judicial district.  This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's registration to do business in Pennsylvania, extensive marketing, advertising, and sale of the Product throughout this District. See *Mallory v. Norfolk Southern Railway Co.*, 143 S.Ct. 2028, 600 U.S. 122, 216 L.Ed. 815 (2023).

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, given that Defendant sells and distributes their Product throughout the United States and within this District.

## FACTUAL ALLEGATIONS

19.     On March 20, 2025, the CPSC issued a recall for certain Segway KickScooters,

Models G30P and G30LP due to a fall hazard.

20.     Defendant has received reports of incidents involving the Scooters including reports of 20 injured consumers who hurt themselves when the handlebar/stem of the Scooter collapsed causing the user to fall.

21.     Plaintiff purchased the Product as "new" and intended it for ordinary use.

22.     Plaintiff reports the handle bar area folding during use.

### *Defendants' Misrepresentations and Omissions are Actionable*

23.     Plaintiff bargained for a Product that was safe to use. Defendant's Products were, and are, unsafe. As a result of the risk of falling while using the Scooter, Plaintiff, and all others similarly situated, were deprived the basis of their bargain given that the Defendant sold them a product whose handlebars/stem could collapse during ordinary use. This dangerous fall risk inherent to the Products renders them unmerchantable and unfit for their normal intended use.

24.     The Products are not fit for their intended use by humans as they expose consumers to a fall hazard. Plaintiff is further entitled to damages for the injury sustained in being exposed to such danger, damages related to the Defendants' conduct, and injunctive relief.

25.     Plaintiff seeks to recover damages because the Products are adulterated, defective, worthless, and unfit for human use due to the risk of catching fire.

26.     The Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of catching fire affecting the Products.

27.     Indeed, no reasonable consumer, including Plaintiffs, would have purchased the Products had they known of the material omissions of material facts regarding the possibility of the Products overheating and catching on fire.

28.     Plaintiff bought their Segway Scooters for personal use.

29.     Plaintiff intended to purchase a Product that would be safe for normal use but instead was sold a product that posed a danger of collapsing and injuring the user.

30.     If Plaintiff had been aware of the risk of injury in using the Scooters, they would not have purchased the Product or would have paid significantly less.

31.     As a result of the Defendant's actions, Plaintiff has incurred damages.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action on behalf of himself and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

**Nationwide Class:** All persons within the United States who purchased Segway's Max G30P or Max G30LP within the statute of limitations.

**Pennsylvania Subclass:** All persons within the State of Pennsylvania who purchased Segway's Max G30P or Max G30LP within the statute of limitations.

33.     Together, the Nationwide Class and Pennsylvania Subclass will be collectively referred to as the "Class" or "Classes."  Members of these Classes will be referred to as "Class Members."

34.     Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

35.     Excluded from the Class and Sub-classes are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and

associated court staff assigned to this case.

36.     The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from major retail sellers.

37.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

38.     The proposed Class is so numerous that the joinder of all members is impracticable.

39.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

40.     **Numerosity: Fed. R. Civ. P. 23(a)(1)** – Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information is in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

41.     **Typicality: Fed R. Civ. P. 23(a)(3)** – Plaintiff's claims are typical of the claims of the members of the Class, because, inter alia, all Class Members have been injured through the uniform misconduct described above.  Moreover, Plaintiff's claims are typical of the Class Members' claims because Plaintiff is advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiff is entitled to relief under the same

causes of action and upon the same facts as the other members of the proposed Class and Sub-class.

42.     **Adequacy: Fed. R. Civ. P. 23(a)(4)** – Plaintiff will fairly and adequately protect the interest of the members of the Class. Plaintiff and the members of the Class were all consumers of a defective product posing an injury hazard.  Plaintiff will fairly and adequately represent and protect the interest of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no antagonistic interest to those of the Class, and Defendant has no defenses unique to Plaintiff.

43.     **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** – A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

44.     Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described. Unless a Class is certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged violations, and the members of the Class a may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

45.     **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** – This action involves questions of law and fact common to the Classes. The common legal and factual questions include, but are not limited to, the following:

a.     Whether Defendant negligently failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution, and/or sale of the Product;

b.     Whether Defendant sold the defective Product, that were unreasonably dangerous to consumers such as Plaintiff and members of the Class;

c.     Whether Defendant failed to adequately warn Plaintiff and the Class of the dangers with respect to the defective Product;

d.     Whether Defendant was negligent for failure to warn;

e.     Whether Plaintiff and the Class suffered Damages as a result of the defective Product;

f.     Whether Defendant was negligent for failure to test;

g.     Whether Defendant's advertising, merchandising, and promotional materials directed to Plaintiff were deceptive regarding the risks posed by Defendant's Product;

h.     Whether Defendant made representations regarding the safety of the Product;

    i.      Whether Defendant omitted material information regarding the safety of the Product;

    j.      Whether Defendant's Product was merchantable;

    k.      Whether Defendant violated the consumer protection statutes invoked herein;

    l.      Whether Defendant's conduct alleged herein was fraudulent; and

    m.      Whether Defendant was unjustly enriched by sales of the Products

## CAUSES OF ACTION

### COUNT I

#### UNJUST ENRICHMENT

46.    Plaintiff incorporates the allegations set forth in previous Paragraphs as though set forth fully herein.

47.    Plaintiff brings this claim against Defendant on behalf of themselves and the other Members of the Classes.

48.    Plaintiff, and the other members of the Classes, conferred a monetary benefit upon Defendant by purchasing the defective Scooters either directly or through major online or in-person retail outlets. These payments were not gifts or donations but were made in exchange for products that were falsely represented as safe and reliable.

49.    Defendant voluntarily accepted and retained these benefits. Defendant manufactured, marketed and distributed the defective Scooters without adequate warnings of the known defect.

50.    The benefit was obtained unlawfully by Defendant distributing a Product prone to having the handlebars/ stem collapse during ordinary use. Retaining these profits without disclosing the defect or refunding consumers is unjust and inequitable.

51.    The Defendant received revenues from the sales of these defective Scooters at the

expense of Plaintiff and the Class, who would not have purchased the Scooters had they been aware of the defect. The labeling and marketing of the Products by Defendants were misleading and caused direct economic harm and risk of injury to Plaintiff and the Class.

52.    Defendant has been unjustly enriched by retaining the revenues derived from the sales of Scooters with defective handles. Retention of these revenues is inequitable because Defendant failed to disclose the known risks associated with their products, thereby misleading consumers and endangering their safety.

53.    Plaintiff and the members of the Classes seek restitution of the monies conferred upon Defendant as a result of their unjust enrichment. Defendant should be required to disgorge the profits obtained from the sale of Scooters equipped with defective handlebars and, as such, seek restitution to Plaintiffs and the Classes, as ordered by the Court.

## COUNT II
## BREACH OF EXPRESS WARRANTY

54.    Plaintiff incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

55.    Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide (the "Class").

56.    Plaintiff and each Member of the Class formed a contract with Defendant at the time they purchased the Products.

57.    The terms of the contract included express warranties created by Defendant through affirmative representations, advertising, packaging, labeling, and marketing of the defective Scooters.

58.    Defendant, through these marketing and advertising efforts, expressly warranted

that the Products were safe, effective, and fit for their intended purpose. These warranties became part of the basis of the bargain between Plaintiff, Class Members, and Defendant.

59.     Defendant made these affirmations of quality and safety through product labeling, packaging, and marketing materials. Defendant reinforced and relied upon these warranties by advertising, displaying, and selling the Products to consumers, thereby making its own express representations of the Products' safety and fitness.

60.     Plaintiff and the Class Members fulfilled all conditions precedent to Defendant's liability under this contract, including purchasing the Products in reliance on Defendant's representations.

61.     Defendant breached its express warranties because the Products were defective, prone to having the handlebars collapse, and presented a serious fall hazard contrary to their representations. The Products failed to conform to the express affirmations and promises made by the Defendant.

62.     Plaintiff and Class Members would not have purchased the Products had they known the true nature of the risks, including the potential for fire hazards and injuries.

63.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and Class Members suffered and continue to suffer financial damages, injury, and economic losses. They are entitled to compensatory damages, attorneys fees, interest, and any other relief deemed appropriate by the Court.

## COUNT III

## BREACH OF IMPLIED WARRANTY

64.     Plaintiff incorporates the allegations set forth in the previous Paragraphs as though

set forth fully herein.

65. Plaintiff brings this claim against Defendants on behalf of himself and the other Members of the Classes.

66. Defendant is a merchant engaged in the business of manufacturing, distributing, warranting, and/or selling the Products.

67. The Products are goods under the relevant laws, and at all times relevant, Defendant knew or had reason to know of the specific use for which these Products were purchased.

68. Defendant entered into agreements with retailers to distribute and sell the Products to consumers, including Plaintiff and Class Members, for personal and household use.

69. The implied warranty of merchantability, which applies to all sales of goods, means that Defendant warranted that the Products were fit for their ordinary purpose-- namely, to safely provide Scooters without posing unreasonable risks of harm.

70. However, Defendant breached the implied warranty of merchantability because the Products were defective, not fit for their intended use, and posed a risk of having the handlebars collapse during ordinary use creating a fall hazard. As a result, they were unfit for their ordinary purpose of safe transportation.

71. This implied warranty applies to all purchasers of the Products, including Plaintiff and Class Members, because they reasonably relied on Defendant's status as merchants and sellers of safe, functional goods.

72. Privity of contract is not required, as Plaintiff and Class Members are the intended beneficiaries of Defendant's implied warranties. Defendant's warranties were created for the benefit of consumers, including Plaintiff and Class Members.

73. Defendant was on notice of the defects through consumer complaints, reports of the Product collapsing during use and the recall of the Products, yet failed to address these defects before selling the Products to consumers.

74. Had Plaintiff, Class Members, and other consumers known that the Products posed an risk of collapsing and injury during use, they would not have purchased them or would have paid significantly less.

75. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Class Members suffered and continue to suffer financial harm, injury, and other damages. Plaintiff and the Classes seek all available damages, including compensatory damages, attorneys' fees, interest, and any other relief deemed appropriate by the Court.

## COUNT IV

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

69. Plaintiff incorporates the allegations set forth in previous Paragraphs as though set forth fully herein.

70. Plaintiff brings this claim against Defendant on behalf of themselves and the other Members of the Classes.

71. Defendant is a merchant engaged in the sale of goods, including the defective Scooters, to Plaintiff and the Class.

72. There was a sale of goods from Defendant to Plaintiff and Class Members, thereby establishing a commercial relationship between Defendant and consumers.

73. As the developer, manufacturer, marketer, distributor, and seller of the defective Products, Defendant impliedly warranted that the Products were merchantable and fit for their

intended use.

74.    However, contrary to these representations, the Products were defective and unfit for their ordinary use, as they posed a significant risk of having the handlebars collapse while being used, which was not disclosed to consumers at the time of sale.

75.    Defendant breached the implied warranty of merchantability by selling products that were inherently defective and not suitable for their ordinary and intended purpose.

76.    Defendant was on notice of this breach, was aware of adverse health and safety risks caused by the handlebars collapsing yet failed to take corrective action before selling the Products.

77.    Plaintiff and Class Members did not receive the goods as bargained for, as the Products were not merchantable, did not conform to industry standards, and failed to meet the quality and safety expectations of similar goods.

78.    Plaintiff and Class Members are intended beneficiaries of the implied warranties, as they reasonably relied on Defendant's expertise and reputation as merchants when purchasing the Products.

79.    Plaintiff and Class Members did not alter the Products, and they used them in the ordinary and intended manner.

80.    The Products were defective at the time they left the exclusive control of Defendant, meaning that Defendant bears responsibility for the defect.

81.    The Products were defectively designed and/or manufactured, making them unfit for their intended purpose and rendering them non-merchantable under applicable laws.

82.    Plaintiff and Class Members purchased the Products without knowing of the latent defect, which was undiscoverable at the time of purchase but existed when the Products left

Defendant's control.

83.     As a direct and proximate result of the defective Products, Plaintiff and Class Members suffered damages, including, but not limited to, the cost of purchasing the defective Product, loss of use, and other related damages.

84.     Defendant attempted to limit or disclaim their implied warranties, but any such disclaimers are unenforceable and void, as a product that poses safety risks cannot be lawfully sold under the implied warranty of merchantability.

85.     Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.


## COUNT V

## FRAUDULENT CONCEALMENT

86.     Plaintiff incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

87.     Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

88.     Defendant had a duty to disclose material facts to Plaintiff and Class Members given their relationship as contracting parties and intended users of the Products.

89.     Defendant had superior knowledge about the defective nature of the product at issue, particularly the risk of overheating and catching fire, which made them unfit for ordinary use.

90.     During this time, Plaintiff and Class Members were using the Products without

knowing of these fire risks, reasonably believing that the Products were safe for use.

91.    Defendant knew or should have known about the defect but failed to warn consumers, retailers, or regulators, and continued to sell the Product despite the defect, and either knew or should have known about the risk, particularly if the recall had already been issued.

92.    Defendant failed to disclose these material facts with the intent to induce consumers into purchasing the Products, despite the latent defect. This failure constitutes fraudulent concealment as Defendant intentionally withheld critical safety information that, if disclosed, would have affected consumer purchasing decisions.

93.    Plaintiff and Class Members reasonably relied on Defendant's failure to disclose, believing that the Products were safe when, in fact, they were not.

94.    Had Plaintiff and Class Members known the true risks, they would not have purchased the Products or would have paid significantly less.

95.    As a direct and proximate result of Defendant's fraudulent concealment, Plaintiff and Class Members suffered financial losses, including the cost of purchasing defective Products, the risk of harm, and the devaluation of their purchases.

96.    Because Defendant acted with willful and malicious intent, punitive damages are warranted to deter future misconduct and punish Defendants for knowingly concealing critical safety information from consumers.

## COUNT VI
## STRICT LIABILITY – FAILURE TO WARN

97.    Plaintiff incorporates the allegations set forth in previous Paragraphs as though set forth fully herein.

98.    Plaintiff brings this claim against Defendant on behalf of himself and the other

Members of the Classes.

99.    Defendant had a duty to warn Plaintiff and Class Members about the Defect and the true risks associated with the Products.

100.    As the manufacturer, Defendant was in a superior position to know about the defective Products and their dangerous propensity to have the handlebars collapse. However, Defendant failed to warn consumers, retailers, and regulatory agencies about the risks when it had the opportunity to do so.

101.    Defendant failed to provide adequate warnings regarding the risks of the Products before or at the time of sale, particularly if it continued selling the Products despite knowledge of the recall or other safety concerns.

102.    Defendants had access to critical safety information regarding the fall hazards associated with the Products, yet failed to warn Plaintiff and Class Members, leaving them unaware of the dangers.

103.    Despite knowing the risks, Defendant did not strengthen their warnings or provide adequate safety disclosures before selling the Products. Instead, Defendant actively concealed or ignored the need for stronger warnings, prioritizing sales over consumer safety.

104.    Plaintiff and Class Members would not have purchased, chosen, or paid for the Products had they known of the risk of a fall hazard during ordinary use caused by collapsing handlebars. Because Defendant failed to provide proper warnings, consumers were deprived of their right to make an informed purchasing decision.

105.    The Defect proximately caused Plaintiff's and Class Members' damages, as they purchased and used a Product that posed an unreasonable risk of harm without their knowledge.

106.    Plaintiff and Class Members have suffered damages in an amount to be determined

at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT VII

### STRICT LIABILITY – DESIGN DEFECT

107.    Plaintiff incorporates the allegations set forth in previous Paragraphs as though set forth fully herein.

108.    Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Classes.

109.    The design of the recalled Segway Scooters was defective and unreasonably dangerous, making the Products unsafe for consumer use.

110.    The risk of falling because of a handlebar defect while Plaintiff and Class Members used the Products caused exposure to known fall hazard and posed a serious risk of injury.

111.    The design defect rendered the Products not reasonably fit, suitable, or safe for their intended purpose, violating consumer safety expectations.

112.    The risk of a fall hazard outweighed the benefits of the Products, making them unreasonably dangerous to consumers.

113.    There were alternatives, safer Scooter designs available, including other Scooters that did not have collapsing handlebars or pose a similar fall risk, meaning Defendant had the ability to manufacture a safer product, but failed to do so.

114.    Defendant could have implemented safer design modifications that would have reduced or eliminated the fire risk, such as improved thermal management systems, enhanced safety circuits, or better casing materials, but failed to do so.

115.    Because the Products were unreasonably unsafe and did not perform as an ordinary

consumer would expect, they should not have been sold to consumers.

116.    Defendant is strictly liable for selling the defective Product, as strict liability applies to all entities in the chain of distribution.

117.    Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT VIII

## NEGLIGENT FAILURE TO WARN

118.    Plaintiff incorporates the allegations set forth in previous Paragraphs as though set forth fully herein.

119.    Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Classes.

120.    Defendant owed Plaintiff and Class Members a duty of care to warn of any risks associated with the Products.

121.    Defendant knew or should have known that the defective product posed a significant fall risk associated with collapsing or folding handlebars, but failed to warn Plaintiffs and Class Members.

122.    Defendant had a duty to warn consumers if it had knowledge or reason to know about the defect including through prior consumer complaints, product recalls, or other safety notices, but failed to provide adequate warnings before or at the time of sale.

123.    Plaintiff and Class Members had no way of knowing about the Product's latent defect, as an ordinary consumer would not expect the Product's handlebar/stem to fold under normal use.

124.    Defendant's breach of its duty to warn caused Plaintiff and Class Members to suffer economic damages and physical injuries.

125.    Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees available under law.

## COUNT IX
## NEGLIGENT DESIGN DEFECT

126.    Plaintiff incorporates the allegations set forth in previous Paragraphs as though set forth fully herein.

127.    Plaintiff brings this claim against Defendant on behalf of themselves and the other Members of the Nationwide Class (the "Class").

128.    Defendant owed Plaintiff and Class Members a duty of care to design, manufacture, and sell products that were safe for their intended use.

129.    The design of the recalled Segway Scooters was defective and unreasonably dangerous, causing the risk of severe injury to the user.

130.    The design of the Products rendered them unfit, unsuitable, and unsafe for their intended purpose, as the fall hazard far outweighed any benefits of the Product.

131.    There were alternative, safer Scooter designs available that did not have the handlebar/stem fold during ordinary use, meaning Defendant could have implemented a safer design but failed to do so.

132.    Defendant had access to industry knowledge, safety reports, and consumer complaints that should have alerted them to the defective nature of the Products.

133.    Defendant was negligent in selling the defective Products, as they either knew or

should have known that the design was unreasonably dangerous, particularly if the recall had been issued or customer complaints had been received before further sales.

134.    The negligent design of the Product was the proximate cause of Plaintiff's and Class Members' damages, as it posed an inherent and foreseeable risk of harm that Defendant failed to address.

135.    Plaintiffs and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT X
## NEGLIGENCE

136.    Plaintiff incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

137.    Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Classes.

138.    Defendant owed a duty of care to consumers to design, manufacture, distribute, and sell products that were reasonably safe for their intended use.

139.    Defendant breached this duty by producing and selling a product that was defective, unreasonably dangerous, and unfit for its intended purpose. The model numbers identified in the recall have handlebars and stem that can fold during ordinary use and create a fall hazard.

140.    Defendant failed to properly design and test the product to ensure its safety before placing it into the stream of commerce, and negligently sold the product without proper warnings, quality assurance measures, or recalls, despite the known risks.

141.    Defendant knew or should have known that the Scooters had a significant risk of having the handlebars or stem fold yet failed to take reasonable steps to prevent foreseeable harm

to consumers.

142. As a direct and proximate result of Defendant's negligence, Plaintiff suffered economic damages, injuries, and deprivation of the benefit of the bargain, as the product did not perform as reasonably expected and was unsafe for use.

143. Further, Defendant's negligence directly caused harm to Plaintiff and Class Members, as it was foreseeable that a poorly designed and untested Scooters would have the handlebars or stem fold and cause injury. It was also foreseeable that consumers would lose the benefit of their purchase if they received a defective and worthless product.

144. Plaintiff and Class Members suffered damages in an amount to be determined at trial and Plaintiffs and Class Members are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT XI

**Violation of the Pennsylvania Unfair Trade Practice and Consumer Protection Law (PUTPCPL) (73 Pa Stat 201)**

(On Behalf of Plaintiff and Subclass)

145. Plaintiff incorporates all prior Paragraphs as if fully set forth herein.

146. Plaintiff brings this count on behalf of himself and the Classes.

147. Defendant engaged in unfair or deceptive acts or practices in violation of the PUTPCPL by knowingly misrepresenting, omitting, or concealing material facts in connection with the sale of the defective Scooters.

148. Defendant also engaged in deceptive trade practices in violation of the PUTPCPL by making false statements, failing to disclose material facts, and engaging in unfair

business practices that caused Plaintiff harm.

149.  Defendant's conduct included false or misleading statements regarding the quality, effectiveness, and nature of the Scooters, which a reasonable consumer would rely upon in making a purchase decision.

150.  Defendant engaged in a course of conduct that was likely to mislead consumers, including Plaintiff, about the true characteristics of the product.

151.  Defendant knowingly and intentionally deceived consumers by advertising, marketing, and selling the products under false pretenses.

152.  Defendant's conduct was unfair, oppressive, and substantially injurious to consumers, creating an unfair advantage over law-abiding competitors.

153.  Defendant engaged in, and continues to engage in, the above-reference deceptive acts and unfair trade practices in the conduct of business, trade, and commerce, including by omitting material facts regarding the handlebars and the danger of collapse within its Product.

154.  Plaintiff relied on Defendant's deceptive acts, unfair trade practices, and omissions, which are described above. Plaintiff has suffered injury in fact and lost money as a result of Defendant's unlawful, unfair, and fraudulent practices.

155.  Defendant's wrongful conduct caused Plaintiff and the Classes to suffer an ascertainable loss by causing them to incur substantial expense in purchasing Defendant's Product which they reasonably believed was safe to use as intended. Plaintiff and the Classes have suffered an ascertainable loss by receiving other than what was promised.

156.  Plaintiff and the Class Members would not have purchased the Product at issue, or would have paid less, had they known the truth about the Product.

157.  If Defendant had not sold its Product that contained falsely advertised information, Plaintiff and the Class Members would not have suffered the extent of damages caused by Defendant's sales.

158.  As a direct and proximate result of Defendant's business practices, Plaintiff and the Class Members suffered injury in fact and lost money or property because they purchased and paid for products they otherwise would not have. Plaintiff and the Class Members are entitled to injunctive relief and attorneys' fees and costs.

159.  Pursuant to the PUTPCPL, Plaintiff and the Class Members seek an order of this Court requiring Defendant to disgorge all ill-gotten gains and awarding Plaintiff and the Class Members full restitution of all monies wrongfully acquired by it by means of such "unlawful" and "unfair" conduct, so as to restore any and all monies to Plaintiff and the Class Members which were acquired and obtained by such "unlawful" and "unfair" conduct, and which ill-gotten gains are still retained by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against the Defendant as follows:

A.  For an order certifying the Class and naming Plaintiff as the representative for the Class and Plaintiffs' attorneys as Class Counsel;

B.  For an order declaring that Defendant's conduct violates the causes of action referenced herein;

C.  For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.     For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief;

G.     For injunctive relief as pleaded or as the Court may deem proper;

H.     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I.     For an order providing for all other such equitable relief as may be just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: April 4, 2025

By: */s/ Stuart A. Carpey*

**CARPEY LAW, P.C.**
Stuart A. Carpey
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
Tel: 610-834-6030
Fax: 610-825-7579
scarpey@carpeylaw.com
*Attorneys for Plaintiff and Putative Class*